653 P.2d 39

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JS–3594.**

**No. 1 CA–JUV 160.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 21, 1982.

Review Denied Oct. 26, 1982.

Hash, Cantor & Tomanek by John M. Tomanek, Alena Cantor, Phoenix, for appellant.

Morris & Walker by Mike Walker, Kent Mecham, Phoenix, for appellee.

## OPINION

GRANT, Judge.

This is an appeal from an order of the juvenile court terminating the parent-child relationship between appellant and his children, Paul Howell Rosbury, Jr. and Shawn Rosbury. We reverse the court's order because we find that the evidence does not support the court's finding of abandonment.

Appellant Paul Rosbury and appellee Naomi Connizzo were married in February, 1966 and divorced in January, 1974, in Florida. There were two children born of the marriage, Paul Rosbury, Jr. and Shawn Rosbury. Appellee was given custody of the children, and appellant was granted visitation rights. In March 1975, appellee moved to Missouri with the children. She subsequently married Joseph V. Connizzo, her present husband. In July, 1978, appellee and her husband moved to Arizona.

On April 8, 1980, appellee petitioned the court for termination of the parent-child relationship between the children and their natural father on the grounds that appellant had abandoned the children, that he had made no effort to maintain a parental relationship with the children, and that he had not provided any support for the children since July, 1977. The petition also stated that Joseph Connizzo, appellee's present husband, was seeking permission to adopt the children.

After a hearing on the matter, the trial court made the following findings and conclusions of law:

1. That the Court has jurisdiction over this matter pursuant to A.R.S. § 8–531 et seq.

2. That the Respondent has abandoned the children and has made no effort to maintain a parental relationship with the children. In the opinion of the Court, the evidence indicated that the Respondent has made only token efforts to support and/or communicate with the children.

THEREFORE, IT IS ORDERED terminating the parent-child relationship between Respondent, PAUL HOWELL ROSBURY, SR., and the children, PAUL HOWELL ROSBURY, JR., and SHAWN ROSBURY.

IT IS FURTHER ORDERED appointing the Petitioner as guardian of the children and fixing in them the responsibility for support of same.

The father appeals from the order of the trial court, and raises the issue, *inter alia,* whether the evidence presented at the severance hearing warrants the finding that he has abandoned his children.

A.R.S. § 8–533(B)(1) (Supp.1982) provides that one of the grounds which justifies the termination of the parent-child relationship is evidence:

[t]hat the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed the parent intends to abandon the child if the child has been left without any provision for support and without any communication from such parent for a period of six months or longer. If in the opinion of the Court, the evidence indicates that such parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent.

The Arizona statute governing the burden of proof required for terminating a parent-child relationship is A.R.S. § 8–537(B) and provides:

The court's findings with respect to grounds for termination shall be based upon a *preponderance of the evidence* under the rules applicable and adhering to the trial of civil causes. [emphasis added]

The Supreme Court of Arizona reviewed this standard of proof in light of the recent United States Supreme Court decision, *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and concluded that the standard is unconstitutional. *In the Matter of the Appeal in Pima County Juvenile Action No. S–919,* 132 Ariz. 377, 646 P.2d 262 (1982). *See In the Matter of the Appeal in Maricopa County Juvenile Action No. JS–4130,* 132 Ariz. 486, 647 P.2d 184 (App.1982). The United States Supreme Court concluded that in parental rights termination proceedings, the "fair preponderance of the evidence" standard violates the due process clause of the fourteenth amendment. The Court stated that a "clear and convincing" standard of proof "strikes a fair balance between the rights of the natural parents and the State's legitimate concerns," and that "such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." —— U.S. at ——, 102 S.Ct. at 1402–03, 71 L.Ed.2d at 617. The Court further held that the determination of the precise burden equal to or greater than the "clear and convincing" standard is a matter of state law properly left to state legislatures and state courts. *Id.* at ——, 102 S.Ct. at 1403, 716 L.Ed.2d at 617.

■ Since the termination proceedings in this case occurred under the unconstitutional burden of proof as specified in A.R.S. § 8–537(B), the findings and orders of the trial court are constitutionally infirm. *See In the Matter of the Appeal in Pima County Juvenile Action No. S–919.* While the general procedure would be to vacate the judgment and remand the case to allow the trial judge to make a new factual determination applying the proper standard of proof, we hold that the evidence in this case is insufficient to support an order of termination under either standard of proof. *See Juvenile Action No. JS–4130.*

*Sufficiency of the Evidence*

In support of the trial court's order terminating the parent-child relationship be-

tween appellant and his two children, appellee alleges that it is in the best interests of the children to sever the parental rights of the natural father and that the children wanted to be adopted by their stepfather. On this latter point, there is evidence in the record that one of the children insisted on using his stepfather's surname in school, rather than his legal name. There is also evidence that the children indicated to the trial judge in private that they wished to be adopted by their stepfather.

■■■ Although the best interests of the child are a valid factor in deciding an abandonment allegation, abandonment cannot be predicated solely on the best interests of the child. *Matter of Juvenile Action No. S–624,* 126 Ariz. 488, 616 P.2d 948 (App. 1980); *Anonymous v. Anonymous,* 25 Ariz. App. 10, 540 P.2d 741 (1975). In determining whether to terminate a parent-child relationship, the focus is primarily on the conduct of the parent, and the court must determine whether that conduct was an intentional relinquishment of parental responsibilities. *Matter of Appeal in Maricopa County, Juvenile Action No. JS–1363,* 115 Ariz. 600, 566 P.2d 1346 (App.1977). Stated another way, a severance of a parent-child relationship requires proof that there is conduct on the part of the parent which implies a conscious disregard of obligations owed by the parent to the child, leading to the destruction of the parent-child relationship. *Anonymous v. Anonymous; Matter of Juvenile Action No. S–624.* We therefore must examine the evidence in this case to determine if this test has been met.

■■■ In reviewing the evidence, we are mindful of the fact that the trial court will be deemed to have made every finding necessary to support the judgment. *In Re Estate of Harber,* 104 Ariz. 79, 449 P.2d 7 (1969); *Marquess v. Spaner,* 15 Ariz.App. 342, 488 P.2d 698 (1971). Furthermore, this court will not interfere with the juvenile court's findings of fact unless there is no reasonable evidence to support them. *Anonymous v. Anonymous.*

In its order dated April 13, 1981, the trial court made the following findings of fact which are not challenged on appeal:

8. From October, 1977 (date of filing of order to show cause, see 6, supra) to December, 1978, Respondent made no attempt to contact the children. He did not write them, send any money, support, gifts, etc., or call them. The fact is that he was unaware that he did not know their whereabouts.

9. It was not until December, 1978, that he found by sending Christmas cards, that they were no longer in Missouri, and it was not until February, 1979, that he found their address in Arizona. In August, 1979, he made a phone call in which he talked to the Petitioner. In December, 1979, he sent them a present.

10. There is a dispute as to the exact amount of arrearage due. The total sum due between the date of the order and the end of December, 1980, is approximately $12,000.00 which the Respondent claims to have paid approximately $8,000.00.

Appellee argues that although the court made no express finding of a presumption of abandonment pursuant to A.R.S. § 8–533(B)(1), such finding can be inferred from findings number 8 and 10, quoted above. Appellee also claims that no child support payments were made from July 19, 1977, until June 20, 1980, which further gives rise to the presumption that appellant intended to abandon the children.

■■■ We agree that the facts in this case appear to give rise to a presumption of abandonment pursuant to A.R.S. § 8–533(B)(1) since the record supports the trial court's finding that for a period of some fourteen months, appellant failed to communicate with, or provide any money or support for, the children. *See, Matter of Appeal in Maricopa County, Juvenile Action No. JS–1363.* Even assuming such a presumption can be inferred, however, it has clearly been rebutted by evidence presented at the severance hearing of the appellant's efforts to maintain a parent-child relationship with his two children.

First of all, we note that this is not a case where the parent opposing the severance removed himself or herself from the proximity of the children. *See Anonymous v. Anonymous.* Rather in this case in July, 1973, appellee took the two children from the State of Florida to Missouri without advising appellant where she was going. After a temporary return to Florida, the mother again left Florida, and was later located by appellant in Little Rock, Arkansas. In November of 1974, appellant provided air fare for the return of appellee and the children to Florida, where the family lived together for a short period of time. In March of 1975, appellee once again left the State of Florida with the children and returned to Missouri without informing appellant.

During the summer of 1976, the children visited appellant in Florida for a period of six weeks. Subsequent to this visitation, appellant began to experience difficulty maintaining contact with the children. Appellee was apparently discouraging visitation because appellant was in arrears in his child support payments,[1] resulting in the development of a strong animosity between the parties. The children did not visit appellant in the summer of 1977 because, according to the testimony of the appellee, "The children would not go."

In July of 1978, appellee, her new husband and the children moved to Arizona. Appellant was not advised of the move and was apparently not aware of the move until January, 1979, when the Christmas gifts he had sent to the Missouri address were returned to him. Appellant later learned the Arizona address of his children from the post office.

The record indicates that appellant made numerous attempts to contact the children by phone.[2] In addition, appellant regularly sent Christmas gifts and birthday cards to the children.

■ The evidence is clear that as of the date of the severance hearing, appellant continued to be in arrears in his child support payments, although the exact amount of arrearages is disputed. Although we certainly do not condone appellant's neglect of his child support obligations, such nonsupport is not synonymous with "abandonment." *Anonymous v. Anonymous.* It is, however, a factor to be considered and, when coupled with a failure to communicate or the absence of sending gifts, is sufficient to uphold a conclusion that the child has been abandoned. *Id.*

■ In this case, however, appellant has made numerous attempts to keep in touch with his children, and has regularly sent them gifts and letters, in spite of the difficulties encountered in determining their whereabouts. We hold that the evidence is insufficient under any constitutionally permissible standard to establish a conscious disregard of obligations owed by appellant to his children.

With respect to the trial court's finding that "the evidence indicated that the [appellant] has made only token efforts to support and/or communicate with the children," we quote from our recent opinion, *Appeal in Maricopa County, Juvenile Action No. JS–4130,* 132 Ariz. at 489, 647 P.2d at 187:

> The last sentence of the abandonment subsection allows a finding of abandonment where parents have made only token efforts to support or communicate with the child. This statutory provision cannot reasonably be construed to mean that a finding of "token efforts" alone will support a termination order; rather

---

**1.** Appellant had been ordered by the Florida Court to pay child support in the amount of $35.00 per week. Appellant fell into arrears on his child support payments and in January of 1975, was ordered to pay an additional $25.00 per month toward the arrearages.

**2.** Admitted into evidence at the severance hearing was exhibit 5, a copy of several of appellant's phone bills which indicates that appellant made calls to the children's residence on the following dates: September 14, 1976, October 9, 1976, November 11, 1976, January 9, 1977, April 20, 1977 and June 19, 1977. He also called on December 25, 1976, but there was no answer as the family had gone on vacation.

it means that "token efforts" by the parent to support or communicate with the child do not necessarily show an intent not to abandon. Even though mere "token efforts" are found, the court must also find, based upon the totality of the evidence, that the parent has abandoned the child.

As we have previously stated, the evidence presented at the severance hearing was not sufficient to support a finding of abandonment.

Because we reverse the decision of the trial court, we do not need to address the other issues raised by appellant.

The judgment is reversed.

JACOBSON and BROOKS, JJ., concur.